DANIEL J. MULLIGAN [103129]
JENKINS MULLIGAN & GABRIEL LLP
4079 Governor Drive, 5015
San Diego, CA 92122
Telephone: (415) 519-8515
Email: dan@jmglawoffices.com

Attorneys for Plaintiff

SUPERIOR COURT IN AND FOR THE COUNTY OF MONTEREY

JAN SIMMONS, as trustee of the NANCY SWEANY TRUST; TERI NELSON, under the terms of a durable power of attorney,

Plaintiffs

v.

INTEGRITY 1st MORTGAGE, an Illinois corporation; JOHN DENNEHY, JR., an individual; TOM FABIANSKI, an individual,

Defendants.

Case No.

**COMPLAINT FOR:**

**1. Violations of Truth In Lending Act**

**2. Rescission For Fraud**

**3. Breach of Contract**

**4. Elder Financial Abuse**

**5. Cancellation of Instruments**

**6. Unfair Business Practices**

DEMAND FOR JURY TRIAL

Plaintiffs JAN SIMMONS, an individual, as trustee of the Nancy Sweany Trust and TERI NELSON, under the terms of a durable power of attorney (hereafter "Plaintiffs") bring this action against Defendants, INTEGRITY 1st MORTGAGE, John Dennehy, Jr., Tom Fabianski and DOES 1 through 100 inclusive (collectively Defendants) and allege as follows:

1. Plaintiffs brings this action to challenge the fraudulent, deceptive and harmful conduct of Defendants in arranging a reverse mortgage for Plaintiffs' long-time friend Nancy Sweany (now deceased) and as the trustee of the Nancy Sweany Trust. The loan was arranged by Defendants despite the fact that Ms. Sweany had no need for funds at the time and did not need or want a reverse mortgage encumbering her home, the real property commonly known as 8362 Limerick Avenue, Winnetka, CA 91306 ("the Property").

2. Plaintiffs authorized this action under the terms of a Power of Attorney dated July 14, 2023. The Power of Attorney authorizes her to handle all financial affairs for Ms. Sweany. Plaintiffs also bring this action under the authority of the Nancy Sweany Trust, for which Plaintiff Simmons is the trustee.

3. Defendants in this action acted deliberately to gain Ms. Sweany's trust so as to convince her to sign documents nominally arranging a reverse mortgage secured by her home. They did so despite it being obvious that Ms. Sweany was not able to understand the terms of the loan or the overall financial effect of what she was encouraged by Defendants to execute and despite being warned by Plaintiffs that Ms. Sweany was not competent to handle such matters and that they were in charge of her finances.

4. By this action, Plaintiffs seeks to rescind the loan agreement, return all parties to their original position before the loan and remove the cloud on title created by Defendants.

**II. JURISDICTION AND VENUE**

5. This Court has jurisdiction over the parties in that the real property at issue is in this county and Defendants are doing business in this county and the acts complained of occurred in this county. The Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331, as Plaintiffs present a federal question under the Truth In Lending Act, 15 U.S.C. § 1601, et. seq.

6. The amount in controversy exceeds the minimum jurisdiction of this court.

## III. PARTIES

7. Plaintiff Simmons is the trustee of the Nancy Sweany Trust, which trust became irrevocable upon Ms. Sweany's death in late 2024. She is also the sole beneficiary of the trust. Plaintiff Teri Nelso is acting under a durable power of attorne for Ms. Sweany.

8. Defendants INTEGRITY 1st MORTGAGE, John Dennehy, Jr. and, Tom Fabianski are all doing business in California. They are primarily engaged in arranging secured loans, including high cost reverse mortgage loan for seniors, which loans are secured by the borrowers' residences. Integrity 1st Mortgage ("Integrity") is an Illinois Corp, licensed to do business in California. The individual defendants are all owners or agents of Integrity and reside in California.

9. At all times mentioned herein, each defendant acted as an authorized agent, employee or other representative of each other defendant. Each act of each defendant complained of herein was committed within the scope of said agency, employment or other representation, and/or each act was ratified by each other defendant. Each defendant is liable, in whole or in part, for the damages and injuries Plaintiffs suffered.

## IV. STATEMENT OF FACTS

10. Nancy Sweany, an 87-year-old woman legally declared incompetent to make financial and health decisions due to advanced dementia and Alzheimer's disease, became the target of an improper reverse-mortgage transaction by Integrity 1st Mortgage and the individual defendants, acting as its agents.

11. Nancy Sweany was a productive and respected member of her community who owned a business and worked for the Mammoth Mountain Ski Patrol. She purchased her home at 8362 Limerick Avenue in Winnetka, California, in 1973. After her mother's passing in 1995, she lived independently, had no living family, was never married, and had no children.

12. For more than twenty years, Jan Simmons has been Ms. Sweany's devoted friend and caregiver. During the COVID-19 pandemic, Ms. Simmons noticed troubling declines in Ms. Sweany's health, financial awareness, and daily functioning. In 2023, those problems escalated: Ms. Simmons was contacted by Ms. Sweany's bank, which discovered and reversed $20,000 in suspicious charges. Following the bank's advice, Ms. Simmons closed the compromised accounts

and opened new ones to prevent further fraud. She also moved all of Ms. Sweany's trust, banking, and legal documents to her own home for safekeeping.

13. Acting in Ms. Sweany's best interest, Ms. Simmons sought legal protection before any further crisis could occur. As Ms. Sweany's capacity declined, she and Ms. Simmons consulted with her trust attorney to restate the Sweany Trust and appoint Ms. Simmons as Power of Attorney for finances, healthcare, and daily living. The restated Trust was executed on July 14, 2023, and added to the other documents already secured at Ms. Simmons's residence. On September 1, 2023, Ms. Sweany's primary-care physician, Dr. Tafet, diagnosed her with dementia and Alzheimer's disease, declaring her unable to make financial or health decisions. She was referred to Dr. Ihor Salo at Kaiser's Geriatric Evaluation and Management Clinic, who, on October 30, 2023, confirmed her diagnosis and incapacity, noting: "This is a permanent and progressive illness. Ms. Sweany is unable to manage her health-care and financial decisions." After some further health problems, Ms. Simmons was designated the trustee of the trust and Ms. Nelson designate the power of attorney.

14. Jan Simmons, then holding Power of Attorney for Ms. Sweany, discovered business cards for Tom Fabianski and John Dennehy Jr., President of Integrity 1st Mortgage, left on Ms. Sweany's kitchen counter in or about January 2024. Ms. Simmons called Mr. Fabianski to ask about their visit. He explained that they were there to sell Ms. Sweany an "upgrade" to her existing reverse mortgage. During the call, Ms. Simmons informed him that Ms. Sweany had dementia and that she was the duly appointed Power of Attorney. Mr. Fabianski acknowledged that he had suspected Alzheimer's and described how, during their visit, Ms. Sweany "seemed impaired"—noting that all she talked about was her dog and she asked if he wanted to rent a room.

15. Based on Ms. Simmons's statements and his own observations, Mr. Fabianski stated that he would not pursue the transaction and would advise John Dennehy Jr. not to proceed. Nevertheless, those explicit warnings—and Integrity 1st Mortgage's own acknowledgment of Ms. Sweany's incapacity—were disregarded. Integrity 1st Mortgage willfully defied these safeguards and initiated a reverse mortgage transaction in direct violation of the law and industry standards.

This misconduct triggered a series of egregious regulatory, legal, and ethical violations, as documented in the following sections.

16. On January 30, 2024, John Dennehy Jr., President of Integrity 1st Mortgage, originated a Home Equity Conversion Mortgage (HECM) loan for Nancy Sweany despite lacking the required Power of Attorney, trust documentation, or verified financial records. Dennehy knowingly excluded Ms. Jan Simmons, the legally designated Power of Attorney, and isolated Ms. Sweany from her representative, even though he knew she lacked the capacity to understand or authorize the transaction.

17. The executed loan documents show that Dennehy imposed both a Life Expectancy Set-Aside (LESA) and a repair rider, citing Ms. Sweany's inability to provide proof of insurance or tax payment. These provisions were added not to protect the borrower but to compensate for Dennehy's failure to verify mandatory documentation. He later admitted uncertainty as to whether Ms. Sweany had valid homeowners' insurance, yet proceeded to have a California Fair Plan policy issued—contrary to HUD requirements that hazard coverage be verified before loan closing.

18. The LESA and $1,400 repair set-aside further depleted Ms. Sweany's loan proceeds and reduced her net benefit, conditions that could not lawfully be imposed on a borrower lacking capacity. No financial assessment or eligibility review was conducted, and Ms. Sweany would not have qualified under federal or lender standards. Dennehy's actions violated multiple HUD origination mandates and state prohibitions against misrepresentation in lending.

19. The property had been properly titled and held in the Trust under Ms. Sweany's prior 2008 JB Nutter reverse mortgage, in full compliance with HUD's requirements for properties held in living trusts. Dennehy disregarded the established status and had Sweany sign a document which removed the property from the Trust without authority or verification. His actions caused Integrity to issue a Trust and POA Opinion Letter that claimed the change was proper. This was false and based on incomplete and inaccurate information, thereby enabling a transaction that should never have been approved.

20. In addition, John Dennehy Jr. failed to conduct a complete title review and did not identify a 2003 Financial Freedom reverse mortgage, which had already been satisfied and

extinguished, also known as the 2001 Bank of America lien. HUD regulations require that all existing liens be verified, paid off, and properly released before any new reverse mortgage is originated. The earlier Financial Freedom loan had already cleared the title as part of a HUD-compliant transaction.

21. Dennehy's incomplete title verification and failure to confirm prior lien releases resulted in serious inaccuracies and noncompliance. On January 17, 2024—twenty days before the new Integrity reverse mortgage was recorded—he caused a reconveyance of the 2001 Bank of America loan to be issued *outside of escrow*. HUD guidance requires that all lien payoffs occur transparently through escrow at closing, with documented sources and funds disbursement.

22. Executing a reconveyance outside escrow raises significant questions regarding the source of payment, compliance oversight, and the validity of title certification. This action jeopardized title integrity, created potential legal exposure for Ms. Sweany's estate, and represented a direct violation of HUD's title and lien-management requirements.

23. Because John Dennehy induced Liberty and its counsel to rely on outdated or incomplete trust documentation, the property was unlawfully removed from the Trust, leaving the estate without legal authority or the ability to act.

24. As a result, Ms. Simmons was forced to retain counsel and file a costly Probate Code § 850 "Heggstad Petition" to restore the property to the Trust. The probate proceeding required eight months for the court to issue its decision, followed by two additional months to resolve recording and title complications. Each step represented an avoidable consequence of Dennehy's original misconduct. The Property is now held by the Trust again.

25. Upon closing of the reverse mortgage loan, Fidelity Title issued a check for $12,463.83 to Ms. Sweany. It was never deposited. The reverse mortgage from Integrity continues to be a lien on the property which Plaintiffs seek to sell.

## V. CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATIONS OF TRUTH IN LENDING ACT
### (Against Defendant Integrity)

26. Plaintiffs incorporate the preceding paragraphs as though set forth in full.

27. The arrangement with Defendants created a loan. The loan was an extension of consumer credit secured by the borrower's residence, as defined in 15 U.S.C. § 1602. Defendant Integrity is a creditor as defined in 15 U.S.C. § 1602(g). The transaction was thus subject to the provisions of the Truth In Lending Act, 15 U.S.C. § 1601, et. seq.

28. The loan was also a high cost loan as defined in the Truth In Lending Act, as the rate of interest exceeds the maximum set by 15 U.S.C. § 1602(aa).

29. Such a loan required that various specific disclosures be made to the borrower, all as provided in 15 US.C. § 1639 and in Reg. Z. All of the disclosures were not given to Ms. Sweany including the proper number of signed Notices of Right To Cancel as required by the Truth In Lending Act..

30. Wherefore, Plaintiffs pray for rescission and damages as well as attorney fees and costs, all as provided by statute. Plaintiffs further exercise the right of rescission under the Truth In Lending Act and demand that the security interest be released and the parties returned to their original positions within twenty days of service of this Complaint, pursuant to 15 U.S.C. Section 1641.

**SECOND CAUSE OF ACTION**
**RESCISSION FOR FRAUD IN THE INDUCEMENT**
**(Against All Defendants)**

31. Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

32. Sweany entered into the agreement with Defendants while mentally incapable of understanding the arrangement. Defendants knew this from their own observation and were expressly told this by Plaintiffs. In response, Defendants agreed to not contact Sweany. This promise turned out to be false. They continually contacted Ms. Sweany without advising Plaintiffs and eventually convinced her to sign various documents nominally creating a reverse mortgage.

33. In signing the loan agreement and other documents, Sweany was not aware of the true nature of the transaction due to Defendant's intentional efforts to hide the actual nature and reality of the deal and because of her own obvious infirmities. Given that, no meeting of the minds

ever occurred and no true contract was ever formed. In so misleading Sweany, Defendants conduct was malicious, fraudulent, and oppressive.

34. Wherefore, Plaintiff asks that the contract be rescinded, the Deed of Trust be rescinded and/or reconveyed and she be returned to her position before the transaction. Plaintiffs are able to repay any amounts actually provided by Integrity for the benefit of Ms. Sweany from the sale of the Property.

**THIRD CAUSE OF ACTION**
**ELDER FINANCIAL ABUSE**
**(Against All Defendants)**

35. Plaintiffs incorporate by reference the preceding paragraphs.

36. Ms. Sweany, at the time of the transaction, was an elder adult as defined in California Welfare and Institutions Code Section 15610.27. Financial elder abuse "occurs when a person or entity" "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder ... for a wrongful use or with intent to defraud, or both. (Welf. & Inst. Code, §15610.30, subd. (a)(1)) A person "takes, secretes, appropriates, obtains, or retains real or personal property when an elder ... is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder ...." (Welf. & Inst. Code, § 15610.30, subd. (c)) A representative of an elder is a "conservator, trustee, or other representative of the estate of an elder ...." (Welf. & Inst. Code, § 15610.30, subd. (d)(1).)

37. Ms. Sweany, at the time she executed the reverse mortgage agreement, was an elder as defined in the above quoted statute. Defendants committed elder financial abuse, as defined above, by obtaining and retaining an interest in real property with an intent to defraud. Further, Defendants' conduct was malicious, fraudulent, or oppressive, making punitive damages appropriate.

38. Wherefore, Plaintiff prays for rescission, actual damages and punitive or exemplary damages, including treble damages as provided by statute.

**FOURTH CAUSE OF ACTION**
**CANCELLATION OF INSTRUMENTS**
**(Against Defendant Integrity)**

39. Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein. As set forth above, due to Defendants' deliberate deception as to the nature the loan agreement and Sweany's incapacity, Sweany did not and could not truly understand the nature of the entire transaction, including the fact that title was to be clouded by the imposition of a deed of trust.

40. For these reasons, Plaintiff asks that the Deed of Trust be cancelled as void pursuant to Civil Code § 3412, which provides that: 'A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled.'

41. Plaintiffs hereby offer to repay all amounts actually provided by Defendants to Gabrielle upon release of the security agreement and sale of the Property.

42. Wherefore, Plaintiffs ask that the contract be rescinded and the Deed of Trust be rescinded and the recorded documents be cancelled.

**FIFTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES**
**(Against All Defendants)**

43. California's unfair business practices act, B & P Code Section 17200, et. seq., prohibits any unlawful, fraudulent or unfair business practice.

44. Defendants' acts and practices as described herein constitute unlawful, fraudulent, and unfair business practices in violation of Sections 17200, et. seq. of the Business & Professions Code, which prohibits any unlawful, fraudulent or unfair business practice.

45. Defendants' conduct was: (1) unlawful as specified in the causes of action above; (2) fraudulent in that Defendants' conduct was likely to deceive and, (3) unfair in that any justification or benefit from Defendants' outrageous conduct is outweighed by the gravity of the consequences to Plaintiffs and the people of the State of California, including but not limited to the elderly.

Wherefore, Plaintiffs are entitled to declaratory and injunctive relief as well as restitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court grant the following relief:

1. For judgment in favor of Plaintiffs and against Defendants on all claims;
2. For actual damages according to proof;
3. For exemplary and punitive damages, including those provided for in the Elder Abuse statutes;
4. For an award to Plaintiffs of the costs of this action, including the fees and costs of experts, together with reasonable attorney's fees, costs and expenses;
5. For an Order Cancelling the Deed of Trust;
6. For all other relief at law or in equity that Plaintiffs are entitled to that this Court deems just and proper.

Respectfully submitted,

Dated: March 5, 2026

JENKINS MULLIGAN & GABRIEL LLP

By: /s/ Daniel J. Mulligan
DANIEL J. MULLIGAN
Attorney for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of each and every claim so triable.

Dated: March 5, 2026

By: /s/ Daniel J. Mulligan
DANIEL J. MULLIGAN
Attorney for Plaintiffs